Pages 1 - 16

United States District Court

Northern District of California

Before The Honorable Jeffrey S. White

Refined Recommendation )
Corporation,            )
                        )
        Plaintiff,      )
                        )
  vs.                   )   No. C08-1081 JSW
                        )
Netflix, Incorporated,  )
                        )
        Defendant.      )
_____)

San Francisco, California
Friday, June 6, 2008

**Reporter's Transcript Of Proceedings**

**Appearances**:

| | |
|---|---|
| For Plaintiff: | Zimmerman, Levi & Korsinsky, LLP<br>226 St. Paul Street<br>Westfield, NJ 07090<br>**By: Jean-Marc Zimmerman, Esquire** |
| | Dergosits & Noah LLP<br>Four Embarcadero Center, Suite 1450<br>San Francisco, California  94111<br>**By: Todd Noah, Esquire** |
| For Defendant: | Fenwick & West<br>Silicon Valley Center<br>801 California Street<br>Mountain View, California 94041<br>**By: Lynn Harold Pasahow, Esquire**<br>   **Virginia DiMarchi, Esquire** |
| *Reported By:* | *Sahar McVickar, RPR, CSR No. 12963*<br>*Official Reporter, U.S. District Court*<br>*For the Northern District of California* |

(Computerized Transcription By Eclipse)

*Sahar McVickar, C.S. R. No. 12963, RPR*
*Official Court Reporter, U.S. District Court*
*(415) 626-6060*

```
 1   Friday, June 6, 2008                              1:30 p.m.
 2                          P R O C E E D I N G S
 3           THE CLERK:  Calling case number C-08-1081, Refined
 4   Recommendation Corp., versus Netflix.
 5           Counsel in the courtroom, please step forward.
 6           Counsel, please state your appearances.
 7           MR. NOAH:  Good afternoon, Todd Noah, Refined
 8   Recommendation.
 9           THE COURT:  Good afternoon.
10           MR. PASAHOW:  Lynn Pasahow and Virginia DeMarchi for
11   defendants.
12           THE CLERK:  And on the telephone?
13                   (Telephonically:)
14           MR. ZIMMERMAN:  Good afternoon, Your Honor.
15           Jean-Marc Zimmerman.  Thank you, Your Honor, for
16   letting me appear telephonically.
17           THE COURT:  Oh, that's fine, as long as you have
18   local counsel here.
19           The first order of business, and this is somewhat
20   repetitious of what the present counsel have heard in the
21   previous CMC this afternoon, but I did give out to both sides a
22   booklet which describes, gives a little bit of biological --
23   it's late on a Friday -- biographical information, not
24   biological, biographical about our magistrate judges.  And I'm
25   going to direct the parties to review that with their clients
```

1  and determine whether the clients are willing to reconsider,
2  consenting to a magistrate judge for all purposes.
3            Both sides, experienced patent litigation counsel,
4  know that we have magistrate judges who have tried these cases
5  to verdict.  Judge Laporte comes to mind.  And we would be
6  willing to allow you to stipulate to a particular magistrate
7  judge or a smaller number from whom one would be chosen at
8  random.
9            And I need that by the 13th, a joint statement that
10 simply says yay or nay with respect to the reconsideration and
11 it certifies that you have discussed the contents of the
12 booklet with your respective clients.
13           Now, with regard to the -- some of the dates that
14 you propose, I think they are largely well taken.  The first
15 thing I'm going to do, however, is if the case doesn't -- if
16 the parties do not consent to a magistrate judge, I'm going to
17 refer all discovery in this case to a magistrate judge.  Again,
18 if you do consent, then he or she will handle the discovery
19 disputes as well.  And I will make the order, then, effective
20 by the 20th of July -- June, excuse me, June 20th for a
21 reference on discovery matters.
22           I'm going to set the tutorial for this case for
23 Wednesday, January 21st of 2009 at 2:00 p.m.  And the Markman
24 for January 28th, '09, at 2:00 p.m.
25           Now, I'm going to ask the parties to submit their

```
 1  claim construction briefs so that there will be three weeks
 2  between the reply and the tutorial.  And I'm going to say
 3  something more about that in a moment, but before I do, the
 4  parties have proposed setting a deadline to amend the pleadings
 5  as of August 1st.
 6          Is that a weekday, Ms. Ottolini, August 1st, because
 7  I have in my notes it's August 2nd for some reason.
 8          THE CLERK:  August 1st is a Friday.
 9          THE COURT:  All right, for August 1st the deadline
10  to amend the pleadings.
11          And as counsel who are present heard the previous
12  CMC, have heard -- and I'll say this for the benefit of counsel
13  on the phone:  I would prefer that parties stipulate to such
14  amendments unless there is a really good reason not to.  But
15  that will be the date to file or file a motion to amend, if
16  such an amendment is necessary or if a motion is necessary,
17  which I hope and expect that it will not be because it's pretty
18  easy to meet the threshold to amend one's complaint.
19          The other thing that I want to talk about is --
20  before I get back to the claim construction process, I see that
21  the ENE, there is already an order in the case ordering ENE in
22  this case; do you have a date in mind by which that would be
23  completed?  I know you also told me that a settlement offer has
24  been proposed; whether we need that at this point or whether we
25  should set a deadline to complete ENE?
```

1   **MR. ZIMMERMAN:**  Your Honor, this is Jean-Marc
2   Zimmerman speaking for the plaintiff.
3         We don't have a date yet, but Ms. DeMarchi and I had
4   discussed having a date sooner rather than later permitted by
5   the time period specified.
6         **THE COURT:**  All right.  What's Netflix's position on
7   that?
8         **MR. PASAHOW:**  An earlier rather than later ENE would
9   be fine with us, Your Honor.  We think something like 90 days,
10  120 days from now would be good.
11        **THE COURT:**  All right.
12        Is that acceptable -- if I say 120 days, is that
13  acceptable to the plaintiff?
14        **MR. ZIMMERMAN:**  Well, Your Honor, I think that's
15  fine.  I think we are actually locking for something earlier
16  than that.  If the case can get resolved, I think we would
17  rather determine that sooner rather than later.
18        **THE COURT:**  All right, well, let's make it 90 days.
19  If events in the case mandate going longer, you all can meet
20  and confer, and we can stipulate, and I'll sign an order for
21  such extension.  But let's set 90 days.
22        Ms. Ottolini?
23        **THE CLERK:**  September 4th, 2008.
24        **THE COURT:**  All right.
25        One of the things I wanted to say about the claim

1  construction process, and that is just to kind of as a
2  background having recently, actually, this week, presided over
3  a claim construction hearing, I have thought about this and
4  actually discussed it with some of my colleagues, and what
5  would be helpful for this Court, and I think other courts as
6  well, is a week after your reply brief is filed, so the last
7  brief is filed, I would like the parties to file simultaneously
8  essentially a condensed version of the slides that you are
9  going to be using at the Markman.
10             Because I've always said when I have the Markman
11 hearing, I have realtime transcript, I have screens, dueling
12 screens, dueling specs jumping out at me, and it's just
13 information overload.  And I thought this past week that would
14 be great if I had some of those slides, not all of them, a
15 week, you know, after the reply brief.  Because that wouldn't
16 put an extra burden on counsel, you would already be preparing
17 your -- for the Markman hearing.
18             But the booklet that, actually, I had in mind has,
19 first of all, the agreed claim terms.  So presumably you agree
20 on some.  If you don't agree on any, then that's fine.
21             And then for each term that the Court will be
22 construing, what I was given in this other case was the term --
23 the claim term, the defendant's construction and the
24 plaintiff's construction side by side.  And in other words,
25 it's really just an excerpt from your claim construction brief.

```
 1                And then the next slide which I've seen, which is
 2   very, very helpful, is one that the parties labeled, or this
 3   party labeled "dispute."  Basically, what it was is in one
 4   slide it presented to the Court what actually was in dispute.
 5   So, for example, in this one, it involved -- I don't fully
 6   understand this, but you all may; it was an electrical
 7   engineering kind of a deal, and the term had to do with what
 8   was in an electrical switch.  The term was "active layer."
 9                And the parties presented a slide where in very
10   short order -- and I'll hold it up (demonstrating) think
11   basically indicated one side's position and the other.  And you
12   will be filing this separately, so you may disagree on what the
13   dispute is, but something that shows in a slide -- this is just
14   something that actually was produced in a hearing.  You know,
15   what is the core of the dispute?  Because frequently I get a
16   lot of language and I attempt to give a proposed construction
17   at the claim construction hearing, and it turns out that there
18   is really one element, given the nature of the invention and
19   the accused device that is at issue.  So something that that
20   tells me what the dispute is.
21                And then the relevant claim language -- this is for
22   each term, so each term would have a tab.  The relevant claim
23   language, the relevant specification excerpt, and any other
24   slides that you think would elucidate those pieces of intrinsic
25   evidence.
```

1            So, for example, in this other case, one of the
2   parties had a slide that said the specification is dispositive,
3   and gave -- and you all have seen this, you've probably done
4   these -- a slide yellowing the specific portion of the
5   specification that they argued was right on point.
6            Again, this is something that you almost certainly
7   will provide to the Court, in any event, at the hearing.  And I
8   have always said it would be better -- I've already read your
9   briefs or in the process of reading them, and it would give me
10  a road map to help me through what you're doing.
11           So there were other matters in this booklet, but
12  they weren't particularly helpful to the Court.  So if you
13  could do that?  Again, it's just a matter of taking your best
14  on-point slides and presenting them one week after your reply
15  brief on the same date.  And that is driven by the dates that
16  I've given you -- or did I give them to you yet?
17           **THE CLERK:** **(Nodding head.)**
18           **THE COURT:** Did, okay.
19           So do both sides understand that?
20           **MR. NOAH:** Yes.
21           **MR. PASAHOW:** A -- few questions, Your Honor.
22           These are separate submissions?
23           **THE COURT:** I think it's hard enough to get you
24  folks to agree on ten terms and get your briefs in on time.
25  This is really your own because, typically, the slides are done

1  ex parte.  But this way we won't have any inadvertent or
2  advertent gaming of the system.  I don't want any advocacy
3  other than what you think from your side.  I don't want you
4  sort of bad-mouthing the other side's slides, you'll have
5  plenty of opportunity to do that at the hearing, but this gives
6  me -- again, it's not every slide, this is pretty focused.
7  Because there may be lots of other slides that you will use.
8         And I'm not -- you know, I'm not, certainly,
9  precluding you from arguing and presenting other slides, but I
10 just thought this week when I went through this, if I had only
11 had this in advance, I actually would have understood what they
12 were talking about and actually have been able to assimilate it
13 because I would have been able to sit side by side with the
14 slides and the briefs and be much more focused in what the
15 parties' position was.
16        Because I try to do that informally, anyway, by
17 making a little chart for myself of, you know, the patentee
18 says this, the defendant says this, and that is their proposed
19 claims.  This is just a little bit more meat on the bones.
20        **MR. ZIMMERMAN:**  Your Honor, this is Jean-Marc
21 Zimmerman.
22        So if I understood you correctly, essentially, you
23 have a slide for the term, one for plaintiff's construction,
24 one for defendant's construction, and one for what the actual
25 dispute between the two parties are?

1         THE COURT:  Basically, within each term you can give
2    me your version, hopefully, it will be the same, of exactly
3    what the tipping point is, what is the dispute over.  Because,
4    again, frequently it boils down to a much narrower subset, a
5    much narrower piece of the term.  Once each side has seen the
6    other side's briefing, you're really not fighting over all
7    the -- I could look at it.  It's sort of like a bench trial,
8    where I make the parties update their proposed findings each
9    day.  In other words, sometimes they will agree on there is
10   testimony about "X," I'm not going to fight it, so now I only
11   have to decide "Y."
12            The more time I can spend on what is really in
13   dispute, I think the better I can be and the faster I can
14   render a claim construction order.  So it's -- you're sort of
15   guinea pigs for an experiment.  I'm going to do it with others
16   and see how it works out.  There has been talk among the Court
17   of actually publishing a form of this because we are trying to
18   be creative in this very complicated area.  This is actually --
19   compared to the other case I had, this is pretty easy.
20            I should say that I have rented both from Netflix
21   and Blockbuster.  So I don't have a preference, and I have no
22   opinion about -- I don't drill down into the technology, I just
23   click a button and there it comes.  I wanted to put that
24   disclosure on the record there.
25                      (Laughter.)

1          **MR. NOAH:**  Your Honor?

2          **THE COURT:**  Yes.

3          **MR. NOAH:**  One question.

4      You will construe up to ten limitations; is that
5  right?

6          **THE COURT:**  Correct -- not limitations, terms.

7          **MR. NOAH:**  Okay.

8          **THE COURT:**  And I wanted to remind the parties that
9  the rules have actually been changed recently.  I know there
10 has been some controversy about the new rules, but you should
11 see the other Judge White about that, not me, but that have
12 been adopted that require that the terms in dispute, in my case
13 it's ten, some other judges have less, some have no limits, but
14 you are going to have to list them in the order of importance,
15 from your view.  And that is right in the new Northern District
16 Patent Rules.  I think that a great idea, because that helps me
17 decipher what is going on and what is really at issue.

18         What I have done recently is I've actually allowed
19 in the Markman hearing, and even to some extent, to a lesser
20 extent in the tutorial, for the parties to refer to the accused
21 invention, because I find, you know, when I started out doing
22 these, I find myself wanting to ask why do I care?

23         You know, it's like one of the terms that I was
24 construing this week was does "several" mean two or more or
25 three or more?  And so my question was why do I care?  And they

1  were able to show me on the accused device why it was material,
2  not to determine the outcome, but to determine the materiality
3  of the term in dispute and the importance of it so I have a
4  context.
5          In discussing this with -- this is a little far
6  afield, but when I have been at panels or on panels with
7  Federal Circuit judges, they've told me that that's okay.  It
8  used to be that I thought that you could never -- discussing
9  the accused invention was verboten, but I've been assured by a
10 couple of these judges who will probably reverse me on the same
11 issue, but they at least tell me that they think that is an
12 appropriate question as long as you don't make -- you don't
13 tailor your claim construction to either create or refute
14 infringement.  Obviously, that is inappropriate and wrong.
15         So anyway, that is my two cents about tutorials,
16 which, by the way, I should tell you that I allow and require
17 that only the experts do the tutorial, not the attorneys.  I
18 found the attorneys want it that way.
19         And also, for those of you -- I know Mr. Pasahow has
20 had tutorials, that you agree upon a videographer to put the
21 presentation on DVD.  It's off the record, but this way when I
22 get ready for claim construction or trial, or whatever, or if I
23 have a turnover in, you know, court personnel, I have a record
24 of the tutorial that I can refer back to only for my own
25 purposes but not for the record.

1          So, that exhausts the Court's agenda.  And once I do
2  the claim construction order, I will have, depending on where
3  we are in the case, we'll set some additional dates to move the
4  case forward.
5          Anything further from the plaintiff's perspective?
6          **MR. ZIMMERMAN:**  No, Your Honor.
7          **THE COURT:**  From the defendant's?
8          **MR. PASAHOW:**  A few things.
9          **THE COURT:**  Yes.
10         **MR. PASAHOW:**  On the new Patent Rules, the parties
11 have stipulated they will apply to our case, even though the
12 rules generally wouldn't because we were filed before them.
13         And then, second, on the question of a protective
14 order, we are getting one to the plaintiffs and don't expect a
15 problem, but sometimes these delay things, so if we aren't able
16 to agree as to a provision or two, would it be acceptable to
17 present the order with the dispute highlighted and ask
18 Your Honor just to resolve those?
19         **THE COURT:**  Absolutely.  And if you do consent to a
20 magistrate judge, they will do it as well.
21         And as counsel know or should know, the Court has a
22 presumptive form on its website, and that should be the
23 starting point.  If there is a dispute, just put in the dueling
24 language.  If you want to put in a sentence or two, a cover
25 letter about what the concerns are, a brief one so I know what

```
 1  the context is, I have in the past resolved those issues.  The
 2  sooner you get that to me, the sooner I can resolve that.
 3              MR. PASAHOW:  Just to verify, I think I understood
 4  Your Honor to say that you want the tutorial done by the
 5  parties' experts, not the attorneys?
 6              THE COURT:  Correct, because I find that somewhat,
 7  at least presumptively, takes the advocacy out of it, although
 8  I have actually had to resort to quoting a version of -- what's
 9  his name, this actor from the baseball movie, where he says
10  there is no crying in baseball, and I have to say there is no
11  objecting in tutorials.  I have had people get up and object in
12  a tutorial, which is not on the record.  And why they are
13  objecting, I don't know.
14              So that is -- in answer to your question,
15  Mr. Pasahow, that's why I have the experts do it, because the
16  scientists are functionally unable to be advocates.  They just
17  tell it like it is, and they don't try to put the advocacy in.
18  If they do, I can stop them without breaking their train of
19  thought.  If a lawyer does it, they are constitutionally unable
20  to take the advocacy out of a presentation.
21              You are assuming I even know the technology enough
22  to understand what the advocacy is at that point, and I don't,
23  of course.  So their job is to kind of dumb it down to the
24  Court's level.
25              Anything further from you?
```

```
1            MR. NOAH:  No, Your Honor.
2            THE COURT:  All right.
3            From you?
4            MR. PASAHOW:  No, Your Honor.
5            THE COURT:  All right.  Thank you very much,
6    Counsel.  I look forward to working with you in this case.
7            MR. ZIMMERMAN:  Thank you very much.
8                  (Proceedings adjourned at 9:23 a.m.)
9
10                         ---o0o---
```

**CERTIFICATE OF REPORTER**

      I, Sahar McVickar, Official Court Reporter for the United States Court, Northern District of California, hereby certify that the foregoing proceedings were reported by me, a certified shorthand reporter, and were thereafter transcribed under my direction into typewriting; that the foregoing is a full, complete and true record of said proceedings as bound by me at the time of filing.  The validity of the reporter's certification of said transcript may be void upon disassembly and/or removal from the court file.

_____

**Sahar McVickar**, **RPR, CSR No. 12963**

**June 11, 2008**